(32 App. Div. 552.)

## In re LYMAN.

(Supreme Court, Special Term, Ulster County.　September, 1898.)

LIQUOR TAX CERTIFICATE—APPLICATION.

　　Under Liquor Tax Law, § 28, providing that there shall be filed with the application for a certificate a consent in writing that such traffic be carried on, executed by the owners of at least two-thirds of the buildings occupied exclusively for dwellings, such buildings would not include woodsheds composed of rough unpainted boards, loosely joined, unlathed, and unplastered, with a single window and no chimney, never before used as dwellings, and tenanted for the first time on the eve of the application by men without families or fixed abode.

　　Petition by Henry H. Lyman, state commissioner of excise, for an order revoking and canceling the liquor tax certificate of Nelson Garrison.　Order granted.

　　Charles F. Cantine, for petitioner.

　　Benjamin McClung and Graham Witschief, for defendant.

　　CLEARWATER, J.　This is an application, under section 28 of the liquor tax law, for the revocation of a certificate.　The principal issue is as to the truth of the allegation that the consent of two-thirds of the owners of the buildings occupied exclusively as dwellings within 200 feet of the defendant's premises had been obtained by him at the time of making his application.　The act provides that when the nearest entrance to the premises of the applicant is within 200 feet, measured in a straight line, of the nearest entrance to buildings occupied exclusively for dwellings, there shall be filed simultaneously with the application a consent in writing that such traffic be carried on, executed by the owners, or their agents, of at least two-thirds of the total number of such buildings.　A Mr. Bingham is the owner of a dwelling claimed by the state commissioner of excise to be within the 200-feet radius.　The defendant's place fronts on Main street, in the village of Marlborough, and the door of its nearest entrance is in a recess, 12 inches south of the north line of the building.　The distance from the door to Bingham's residence is 199 feet; from the doorstep it is 200 feet.　To hold that the measurement should be taken from the door, instead of the doorstep, would be an overstrained and hypercritical construction of the act, neither in accord with accepted canons of construction as to legislative intent, nor that common sense which should guide judicial as well as lay opinion. The application was made to the county treasurer of Ulster county at about 9 o'clock of the evening of the 5th day of May, 1898, and granted about an hour afterwards.　For 12 years prior to that time, a building, 10 feet long, 8 feet wide, and 7 feet high, composed of rough, unpainted boards, with a single window and no chimney, standing in the rear of the defendant's premises, had been used as a woodshed. The boards were so loosely joined that it was easy to look into the building through the joints.　About midnight of the 5th of May, a man of nomadic life, without family, who had previously slept in a cooper shop, moved into it, and claims to have lived in it since.　Another building of rough hemlock boards, 12 feet long, 8 feet wide, and

7 feet high, without windows or chimney, was at that time built a few feet distant from the woodshed, and on that night, for the first time, was occupied by a man of migratory habit, also without family, who had previously slept in a small building used for packing berries. Neither building was lathed or plastered. Neither had ever been used as a dwelling. Their construction was of the slightest character, with little, if any, foundation. Both complete cost $35. They were the property of the owner of the building in which the defendant conducts his business. It is claimed by the defendant that they are "dwelling houses," within the meaning of this act, and they were so alleged to be in his application. This law, like any other, should receive a fair interpretation. It should, not be construed harshly as against the holder of a certificate, nor interpreted so loosely as to emasculate its restrictive provisions, and break down that protection which it gives to adjacent property owners, the public, and to the dealer who honestly complies with all its conditions, as against one who seeks to evade it. It is not the size or the material of which a building is constructed, but the purpose to which it is devoted, that is the controlling factor under this statute. A dwelling may be humble and inexpensive, yet as much a domicile as a mansion. But to hold that buildings of this character, tenanted for the first time on the eve of an application for a certificate, by men without families or fixed places of abode, are to be regarded as dwellings for the purpose of obtaining and holding a certificate, would be farcical. It would be wiser to expunge the provision of the law relative to the consent of owners of dwellings from the statute book; for to retain it, and permit it to be evaded by artifices so transparent, is to bring the entire legal system of the state into contempt. These buildings were not "dwellings," within the provisions of this statute, and to treat them as such was an evasion of the law. Further discussion is unnecessary. As the defendant did not file and had not obtained the requisite consents, the statement in his application that he had done so was untrue.

The prayer of the petitioner must be granted, and the certificate revoked, with such costs as are properly taxable in a special proceeding.