## In re HENRY.

(Supreme Court, Special Term, Kings County. June 23, 1913.)

1. INTOXICATING LIQUORS (§ 66*)—APPLICATION FOR LIQUOR LICENSE—"PREMISES"—MEASUREMENTS.

Where an application for a liquor tax certificate under Liquor Tax Law (Consol. Laws 1909, c. 34) § 15, subd. 3, requiring the application to so describe the premises as will reasonably indicate the locality thereof, made no reference to the applicant's entire tract, but referred to a particular room in a building for the location of the proposed bar, the measurement for the determination of the question of consents must be taken from the door of the building, though the word "premises" may include land and buildings or either if specified in the application.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 66; Dec. Dig. § 66.*

For other definitions, see Words and Phrases, vol. 6, pp. 5509–5513; vol. 8, p. 7761.]

2. INTOXICATING LIQUORS (§ 66*)—LICENSES—CONSENTS—OWNERS.

The fact that buildings from the owners of which consents for a liquor tax certificate were filed were quickly erected on parcels of land purchased from the applicant must be considered in determining the actual character and bona fide ownership of the buildings, but where at the date of the filing of the application the ownership of the buildings was independent of the saloon ownership, and was vested in substantial men of family, of independent business, they must be treated as buildings, the owners of which could give consents, though the buildings were erected for summer homes only, and were substantially completed and ready for occupancy as dwellings when the application was filed.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 66; Dec. Dig. § 66.*]

3. INTOXICATING LIQUORS (§ 66*)—LIQUOR TAX CERTIFICATES—APPLICATION.

The date of the filing of an application for a liquor tax certificate is the date to which the truth or falsity of the statements therein is to be judged.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 66; Dec. Dig. § 66.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. INTOXICATING LIQUORS (§ 108*)—LIQUOR TAX CERTIFICATE—REVOCATION—
   BURDEN OF PROOF.

    One seeking to revoke a liquor tax certificate on the ground of false statements in the application has the burden of proving the falsity of the statements.

    [Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 116–118; Dec. Dig. § 108.*]

Petition by John E. Henry, Jr., for an order revoking and canceling the liquor tax certificate issued to Alexander Maletta and transferred to Albert Zapfe for alleged false statements in the application for the certificate in respect to the number of dwellings, from the owners of two-thirds of which consents were required. Denied.

Frederic C. Pitcher and Carl S. Stern, both of New York City, for petitioner.

Morton C. Fitch, for respondent.

KELBY, J. Respondent is the owner of a tract of land at Blue Point, having a frontage of about 125 feet on Middle road and about 430 feet on Arthur avenue. In his application he stated that the location of the premises where the business was to be carried on was about 300 feet north of Middle road, and that the specific location on said premises of the bar or place at which liquors were to be sold was the front room, ground floor, south side, or end of building. The saloon building on his land is in fact situated about 300 feet north of Middle road.

[1] Petitioner claims that the measurement should be taken, not from the door leading into the saloon building, but from the center of a break or opening in the privet hedge on the boundary of respondent's land fronting on Arthur avenue, contending that the break in the hedge is the entrance to the "premises" where the traffic was to be carried on. If such is to be the point of measurement, there were more than three dwellings within the 300 foot radius. If, however, the certified premises is to be taken to be the building on the land, and not the entire tract of land upon which the building was situated, the point of measurement would be about 160 feet east of Arthur avenue, such being the situation of the building, and measuring from its door the maximum number of neighboring dwellings, within the radius fixed by the statute, did not exceed three and the consents of the owners of two, constituting the requisite two-thirds, if these three only were to be considered, were filed; the remaining dwelling being that owned by the petitioner.

It may be assumed that the term "premises" as used in the statute is broad enough to include land and buildings or either, if specified in the application, but the immediate question here involved is whether the specification of premises in the particular application was intended to be broader than the saloon building, and inclusive of the whole tract of land, and it is to be solved along the usual lines of interpretation of written instruments. By the statute (section 15, subd. 3) the specification of the premises is not required to be by metes and bounds, or by oth-

er exact description. It is enough to supply "such apt description as will reasonably indicate the locality thereof." In the present application there certainly is no reference to respondent's entire tract or description of it as being the premises intended to be specified, and, on the other hand, there can be no doubt but that the premises in mind as the place of the intended traffic was to be a building. The reference to a particular room makes this certain. It would be lawful to sell liquors on respondent's tract at any place or building or location specified, if consented to by the requisite proportion of neighboring owners, and, having specified such place, it cannot be assumed that he proposes now, or secretly proposed then, to sell it at some other point on his tract, where, by the statute, it would be, for lack of consents, unlawful to do so. Matter of Keene v. Toole, 1 Liq. Tax R. 79. Hence, I think the measurement must be taken from the immediate entrance to the building; that is, from its door.

[2, 3] It is further claimed by petitioner that the two buildings from the owners of which consents were filed were sham and pretended dwellings, for which no valid consent could be given. It is not to be disputed that these buildings were quickly erected on parcels of respondent's tract which he sold to friends of his, and that they were probably erected with a purpose, in part, of making up the two-thirds consent, still the determination of whether or not they were dwellings is to be reached not so much on consideration of those facts, though they are to be given their proper weight, as on the consideration of the actual character and bona fide ownership of the buildings themselves. However the fact was before the date of the filing of the application, which is the date as to which the truth or falsity of its statements is to be judged, the ownership of the dwellings on that date was independent of the saloon ownership and was vested in substantial men of family, of independent business to that of the respondent. They are undisputably summer homes only; so is the petitioner's dwelling. They are substantial buildings within the limitations of their type of construction, costing unfurnished $243 and $221.67, respectively, and in addition the land cost $200 for each plot of 50 by 100 feet. The buildings are 14 by 21 feet, resting upon six concrete piers, and are one story in height, containing three rooms and six windows, and are painted and watertight. Each is furnished with two beds, oil stoves, window shades, tables, etc., and has outside toilet facilities.

Rural Long Island has in recent years become plentifully dotted with summer dwellings of the type of these, popularly called "bungalows," and occupied for dwelling purposes by persons who find rest and recreation in them by living in them during the summer, freed from the often irksome impediments of their winter homes. "It is not the size or the material of which a building is constructed, but the purpose to which it is devoted, that is the controlling factor under this statute. A dwelling may be humble and inexpensive, yet as much a domicile as a mansion." Matter of Lyman, 24 Misc. Rep. 552, 53 N. Y. Supp. 577. I think these buildings are dwellings within the meaning of the statute. Had they been erected by friends of the petitioner for the purpose of opposing, instead of by friends of respondent interested

in aiding, the issuance of the certificate, the withholding of consents in respect to them would certainly have defeated the application. The fact which is urged that they had not been actually occupied up to the date of the filing of the petition does not take from their character as dwellings. In Matter of Ruland, 21 Misc. Rep. 504, 47 N. Y. Supp. 561, the statute was construed "to include buildings constructed and meant for such exclusive occupations as dwellings. Gaynor, J., said:

"In the case of a new street or block of dwellings not yet let I do not think the owners of such dwellings may be ignored by an applicant for a liquor tax certificate. That might enable such a certificate to be obtained without any such consent."

Accepting the limitation to that ruling made by Crane, J., to completed dwellings (in Matter of Clement, 58 Misc. Rep. 638, 111 N. Y. Supp. 1073), those dwellings were substantially completed and ready for occupancy as dwellings by March 15th, when the application was filed. These are all the objections raised by the petitioner which merit consideration.

[4] The burden of proof in the revocation proceeding is upon the petitioner, and this he has failed to sustain both as to the good faith in the erection of two dwellings, or as to their character as dwellings; and, since he is incorrect in his contention as to the point of measurement for the 300 foot radius, it follows that the application should be denied, without costs.