In re FARLEY, State Excise Com'r.

(Supreme Court, Special Term, Herkimer County. February, 1915.)

1. INTOXICATING LIQUORS ⬤➡45—LIQUOR TAX LAW—CONSTRUCTION.

The Liquor Tax Law (Consol. Laws, c. 34), like any other law, is to be fairly interpreted, neither harshly against a certificate holder, nor so loosely as to emasculate its restrictive provisions.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 47; Dec. Dig. ⬤➡45.]

2. INTOXICATING LIQUORS ⬤➡108—TAX CERTIFICATE—REVOCATION—BURDEN OF PROOF.

Petitioner, seeking to revoke a liquor tax certificate, presumably lawfully issued, whether on the ground of false statements in the application for the certificate, or of consents required by Liquor Tax Law, § 15, not having been properly filed, has the burden of proof on the entire case; but the burden of evidence may shift from time to time, or may rest in the first instance on respondent.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 116–118; Dec. Dig. ⬤➡108.]

3. INTOXICATING LIQUORS ⬤➡66—TAX CERTIFICATE—CONSENT OF DWELLING OWNERS.

Liquor Tax Law, § 15, subd. 8, requiring to be filed with an application for liquor tax certificate the acknowledged consent in writing of the owners of neighboring dwellings, is not satisfied as to a dwelling owned by two, where one of them neither signed nor acknowledged it; an oral consent being insufficient.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 66; Dec. Dig. ⬤➡66.]

4. INTOXICATING LIQUORS ⬤➡108—TAX CERTIFICATE—CONSENT—SIGNING BY AGENTS—PRESUMPTION.

As to a consent, filed with an application for a liquor tax certificate, and signed in the names of owners of neighboring dwelling, and acknowledged by one of them for himself and as agent of the others, it will, on a proceeding to revoke the certificate, be presumed that he signed the names of the others, and had authority to do so, and to acknowledge it for them; it not being necessary for him to file evidence of his authority, but the burden of showing that the apparently valid consent was executed without authority being on petitioner for the revocation.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 116–118; Dec. Dig. ⬤➡108.]

5. INTOXICATING LIQUORS ⬤➡66—TAX CERTIFICATE—CONSENT—"OWNER."

A purchaser under contract is the "owner," within Liquor Tax Law, § 15, subd. 8, requiring application for liquor tax certificate to be accompanied by consent of owners of neighboring dwellings.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 66; Dec. Dig. ⬤➡66.

For other definitions, see Words and Phrases, First and Second Series, Owner.]

---

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. INTOXICATING LIQUORS ⬅66—TAX CERTIFICATE—CONSENT—DESCRIPTION
    OF DWELLINGS.
        Liquor Tax Law, § 15, subd. 8, requiring an application for a liquor tax
    certificate to be accompanied by the written consent of the owners of
    two-thirds of the dwellings within 200 feet, not providing for a descrip-
    tion of the dwellings, a consent by one, though describing him as the own-
    er of certain dwellings, is a consent also as to all other dwellings owned
    by him within the prescribed distance.
        [Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 66;
    Dec. Dig. ⬅66.]

Petition by William Farley, as State Commissioner of Excise, for
an order revoking and canceling liquor tax certificate No. 20,889, is-
sued to Wasyl Bednarczuk. Dismissed.

This proceeding is brought for the revocation and cancellation of a
liquor tax certificate, upon the ground that the holder of such certifi-
cate did not procure the consent in writing of two-thirds of the owners
of the buildings occupied exclusively for dwellings, situated within
300 feet of the nearest entrance to the premises in which the traffic
in liquor is carried on, and that material statements in the application
were false.

A. M. Sperry, of Albany (William V. Cooke, of Albany, of counsel),
for applicant.

James H. Greene, of Herkimer (C. D. Thomas, of Herkimer, of
counsel), for certificate holder.

ROSS, J. Both the petitioner and respondent assume that there are
45 dwellings within the prescribed limit. The respondent stated in his
application that there were 42, but no contention is made because of
such statement. The petitioner claims that the respondent did not ob-
tain the requisite two-thirds, or 30 consents. The respondent claims
that he has the consents of 33 owners, or 3 in excess of the requisite
number. The petitioner claims that the respondent has only the ap-
parent consents of 31 owners. The precise cause of this difference in
the apparent number of consents is somewhat obscure, but, as nearly as
I can make out, arises by reason of the fact that the petitioner includes
in the 31 apparent consents the premises No. 235 King street, used in
part as a bakery, which the respondent does not claim, and the respond-
ent claims that he has the consents for Nos. 2, 3, and 4 East Smith
street, which is denied by the petitioner.

The facts in relation to the property on East Smith street, known
as the "Ten Commandments," are as follows: On August 1, 1913, the
Mark heirs were the owners of a lot 230 feet front on East Smith
street, on which there are 10 small houses, numbered from 1 to 10,
inclusive. On that day a contract of purchase and sale was entered
into between J. Howard Mark, executor, on behalf of the Mark heirs,
and Wasyl Bednarczuk, the respondent. It was agreed between the
parties to said contract, upon the payment by the purchaser of the pur-
chase price at the times therein specified, that upon February 1, 1929,
the vendors would deliver to the purchaser a deed of the premises in
question. It is to be noted that the saloon herein is located in the prem-

ises No. 1, and also in this connection it is to be noted that the respondent, Wasyl Bednarczuk, owns the premises known as No. 232 Perry street, a house nearly 300 feet from the saloon premises. To return to the premises on Smith street, Wasyl Bednarczuk, the respondent, as owner of the dwellings situated at Nos. 7, 8, 9, and 10 East Smith street, executed a consent, and also executed a consent as owner of the premises known as No. 232 Perry street. The respondent also obtained the consents of the Mark heirs as owners of the legal title to the premises Nos. 7 to 10, inclusive. There is no proof before me in regard to the premises Nos. 5 and 6. They are omitted from the map presented in evidence by the petitioner, and I assume are either destroyed or unoccupied. The petitioner obtained no consent in terms referring to Nos. 2, 3, and 4 of the aforesaid houses known as the "Ten Commandments."

The petitioner also challenges the consents for the premises known as the Marlow premises, No. 242 King street, and the premises, No. 230 Perry street, known as the Domidowicz premises. The facts in relation to the Marlow premises are that these premises are owned by Arthur Marlow and Malinda, his wife, that the consent apparently was signed by Arthur Marlow, and was acknowledged by him; but in fact, the husband's name was signed by the wife, who testified, over the objection of the petitioner, that at or about the time the consent was signed she had a talk with her husband about the proposed signing of the consent, and that both the witness and the husband were satisfied to give their consent. The facts in the Domidowicz case are that the consent was in fact signed and acknowledged only by the husband. The wife testified upon the hearing, over the objection of the petitioner, that she knew the object of the paper, and that she in fact consented.

The petitioner also challenges the consents given by Laura Mark Brayton, Bessie Mark, Pauline Mark, and J. Howard Mark, as owners of 11 separate premises. These consents were apparently signed by the 4 persons named, and are acknowledged by Howard Mark for himself, and also a separate acknowledgment as agent for his co-owners. Upon the trial it appeared that the will of Mr. Mark, deceased, provided and gave to his executors power to sell and contract for the sale of any real estate he owned.

[1] I think the rule as to the construction of the statute under consideration was correctly stated by Mr. Justice Clearwater in the Matter of Lyman, 24 Misc. Rep. 552, 53 N. Y. Supp. 577:

"This law, like any other, should receive a fair interpretation. It should not be construed harshly as against the holder of a certificate, nor interpreted so loosely as to emasculate its restrictive provisions, and break down that protection which it gives to adjacent property owners, to the public, and to the dealer who honestly complies with all its conditions, as against one who seeks to evade it."

[2] A word about the burden of proof: It does not seem to me to be very important in this respect whether the proceeding is to revoke the certificate upon the ground that material statements in the application of the holder of such certificate were false, or whether the pro-

ceeding was brought upon the ground that the consents required by section 15 of the Liquor Tax Law were not properly filed. The petitioner who seeks to revoke a certificate, presumably lawfully issued, has the burden of proof upon the entire case; but the burden of evidence may shift from time to time, or may rest in the first instance upon the respondent. As an example of what is meant in this regard, take the cases of Marlow and of Mark. In the former case, the respondent did not file a consent of both the owners of the premises, and the burden of evidence is upon him to come forward with proof showing that he in fact did procure such consent; while in the second case the respondent filed what is apparently a valid consent of the owners, and the burden of evidence is upon the petitioner to show that in fact such consents do not have the legal effect to which they apparently are entitled.

### The Marlow and Domidowicz Cases.

[3] The questions arising in the Marlow and Domidowicz Cases are easily disposed of. In each of these cases, one of the owners neither signed or acknowledged the requisite consent, and to hold these consents valid would be to substitute an oral consent for the formal consent required by the statute. These consents must be held to be invalid.

### The Mark Case.

[4] In the Mark Case, the names of the four owners are written one under the other. The names are bracketed against the printed matter, and each is filled in with the description of the different premises they own. It does not appear who, in fact, wrote the signatures. There are two acknowledgments, dated December 2, 1913, one by Howard Mark, who acknowledged for himself that he was one of the persons named in the foregoing consent, and that he signed the same and acknowledged the execution thereof. The other acknowledgment is also by Mr. Mark, the contents of which are as follows:

"State of New York, County of Herkimer—ss.:

"On this 2d day of December, 1913, before me personally came Howard Mark, to me known, and known to me to be the person who executed the foregoing· instrument and consent, and he duly acknowledged the execution thereof, and, being by me duly sworn, he did depose and say that he was the agent of Laura Mark Brayton, Bessie Mark, and Pauline Mark, duly authorized by them to execute and acknowledge the foregoing instrument for them and in their behalf; and he further acknowledged to me that he executed the same as such agent, as the act and deed of said Laura Mark Brayton, Bessie· Mark, and Pauline Mark, for the purposes therein mentioned.

"James H. Greene, Notary Public."

It seems to me that this instrument complies with the requirements of the statute. It must be assumed that Mr. Mark both signed and acknowledged the instrument in question, and that he had the authority to so do. It is not necessary for him to file evidence of his authority. Rosendorff v. Haas, N. Y. L. J., Dec. 18, 1907. It may be that, if Mr. Mark only relied upon the power of sale in his testator's will, such authority would not be sufficient. Matter of McCoy, 104 App. Div. 215, 93 N. Y. Supp. 401. But, following the principles hereinbefore stated relative to the burden of proof, it was incumbent upon the peti-

tioner to come forward with proof to show that an apparently valid consent was executed without authority. These consents must be held valid.

### The Smith Street Cases—Nos. 2, 3, and 4.

[5, 6] As to whether Bednarczuk's consents, in which he described himself as owner of the premises, No. 232 Perry street, and Nos. 7, 8, 9, and 10 East Smith street, is also a consent as to the premises Nos. 2, 3, and 4 East Smith street, is a more difficult question. As a purchaser under a contract, he was the owner within the meaning of the statute. Clement v. Ambrosia, Justice De Angelis, Oneida Special Term, March, 1908, unreported.

Section 15 of the Liquor Tax Law provides in detail the statements to be made upon application for a liquor tax certificate, which, so far as relates to this case, may be summarized as follows: The applicant shall prepare upon the blank furnished by the county treasurer or by the special deputy commissioner of excise a statement giving the name or names of every person interested or to become interested in the traffic in liquors for which the statement is made. Subdivision 3 of said section provides:

"The premises where such business is to be carried on, stating the street and number, if the premises have a street and number, and otherwise such apt description as will reasonably indicate the locality thereof, and also the specific location on the premises of the bar or place at which liquors are to be sold."

And then follow a number of provisions which have no relevancy in this case.

Subdivision 8 of said section 15 provides that, simultaneously with said statement, there shall be filed a consent in writing that such traffic in liquors be carried on in said premises during a term therein stated, executed by the owner or owners, or by a duly authorized agent or agents, of at least two-thirds of the total number of dwellings within 300 feet so occupied as dwellings. Section 17 of the Liquor Tax Law provides, with other matters, that when the application provided for in section 15 is found to be correct in form, and does not show on the face thereof that the applicant is prohibited from traffic in liquors, and the bond required is found to be correct, upon the payment of the taxes levied under the provisions of the law applicable thereto, he shall at once prepare and issue to the person making such application a liquor tax certificate.

It is to be noted that subdivision 3 provides for a specific description of the premises where liquors are to be sold, while subdivision 8 relative to the consents of the owners of dwellings has no such provision. It may be said with considerable force that a specific description is necessary to enable the county treasurer to determine whether the applicant has in fact obtained the consents of the required number. But the applicant herein stated upon oath the number of dwellings within the prescribed radius, and answered "Yes" to the inquiry whether the required number of consents had been obtained, and replied "Yes" to the inquiry that they had heretofore been filed, so that the county treasurer had before him the sworn statement of the applicant that the re-

quired number of consents had been obtained, and the consents themselves, and, if it appeared that the provisions necessary to obtain a certificate had not been complied with, the county treasurer should have refused to issue a certificate, or could have required more definite information. The county treasurer had the right to be satisfied that the provisions of the law had been complied with, and being so satisfied, and having issued the certificate, the only question now presented is whether in fact such assumption was correct. The respondent claims that it was; that he did in fact consent as to all the buildings occupied as dwellings owned by him within the prescribed radius.

There is no provision in the statute requiring that the consent shall contain a description of the building or buildings occupied exclusively for a dwelling owned by the consenting party. The matters required by the statute are ownership and consent, and the formal requisites relative to the execution of the instrument. If these two most important requirements are to depend upon, or to be modified or invalidated by, the omission of specifically described location of the dwellings owned, it would seem that the statute would have so specified, and given in detail what description was required.

The consent required necessarily implies two conditions: First, ownership of a dwelling or dwellings within the prescribed radius; and, second, the consent or willingness that the applicant engage in the traffic in liquors. These two essential facts are required to be evidenced by a formal instrument. What is this willingness or consent, but a mental condition? The consent relates solely to the mental attitude of the individual towards the establishment of a place for the traffic in liquors, and either he is willing such traffic shall be carried on, or he is unwilling. In other words, it is impossible that he can have two mental attitudes in this regard antagonistic to each other—that as the owner of one piece of property he consents, and as the owner of another piece of property (within the same radius) he declines to consent. We have under consideration the case in which the applicant for a saloon (the respondent) is the owner of at least 8 separate dwellings, and has consented in terms as to 5 of these. It requires somewhat of a peculiar analysis to construe this statute to mean that he consented as to 5 dwellings and failed to consent as to 3, and then proceeded to establish and open a saloon.

But, in addition to this, another condition in this case should not be overlooked that, while there are at least 8 dwellings on East Smith street, 7 besides the saloon, this property was described in the articles of agreement between the Mark heirs and the respondent as a single .piece or parcel of land, 230 feet on Smith street, so that it is a question whether, in signing the consents for Nos. 7, 8, 9, and 10, even if a highly technical construction is to be followed, they did not describe with sufficient precision the premises in question.

It may be said that the respondent, having described some of the dwellings owned by him, has excluded all others; but we are dealing, not with a construction or interpretation of a pleading, but with a statutory requirement, and if a specific description of the location of the consenting party's dwelling or dwellings is not necessary, he has not invalidated his rights because he has described only a portion of them.

A question might have arisen as to whether Nos. 2, 3, and 4 East Smith street were dwellings; but the evidence of Geno C. Rogers, special agent of the department of excise, and map, Exhibit 7, supply this proof. But, assuming that these houses were not dwellings, and are excluded from computation, the petitioner would still have the requisite two-thirds.

I therefore, under the facts in this case, hold that the consent relates solely to the intent of the owner of the dwellings within the prescribed radius, and that the respondent has complied with the statute in obtaining and indicating such intent. Therefore the respondent procured and filed 31 consents, or one more than the requisite number, and the application to revoke the certificate must be denied.

Application dismissed, with costs and disbursements, to be taxed as in a special proceeding.